```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


DEBORAH H. BOUDREAUX                         CIVIL ACTION

VERSUS                                       NO: 07-555

J.P. MORGAN CHASE & COMPANY,                 SECTION: "J" (3)
ET AL.
```

### ORDER AND REASONS

Before the Court are two motions in limine filed by the Defendants. (Rec. Docs. 21 & 22). For the reasons below, both motions are **DENIED**.

### BACKGROUND

Plaintiff was injured as she was exiting the J.P. Morgan Chase Bank branch at LaPalco Boulevard in Marrero, Louisiana. After Mrs. Boudreaux exited the building, she utilized a handicap ramp to return to her car, which was parked in the building's parking lot. She did not notice the 5 inch high abutment at the base of the ramp. She tripped over the abutment and stumbled before falling and hitting her head on the concrete. She

1

instituted this lawsuit to recover for her damages.

Mrs. Boudreaux has been treated by a Dr. Cashio, who plaintiff intends to call as a witness at trial.  Defendants seek to limit the testimony of Dr. Cashio for failure to submit an expert report as required by the *Federal Rules of Civil Procedure*.  In addition, Defendant seeks to limit the testimony of Danny Joyce.  Defendant claims that Mr. Joyce is not qualified to give an expert opinion on the condition of the parking lot at the time of the accident.

## DISCUSSION

**Defendant's Motion to Limit the Testimony of Dr. Cashio**

FED. R. CIV. P. 26(a)(2)(B) requires, in part, that "with respect to a witness who is retained or specially employed to provide expert testimony in the case [such testimony] be accompanied by a written report."  The Scheduling Order in this case provides that "written reports of experts, as defined by Federal Rule of Civil Procedure 26(a)(2)(B) . . . shall be obtained and delivered to counsel . . . no later than September 13, 2007."  (Rec. Doc. 10).  Plaintiff's counsel sent a letter to Dr. Cashio on September 26, 2007 asking him for a report that he could submit about the Plaintiff's treatment.  The letter indicates that the report that the doctor gave would be submitted

to the parties in lieu of a live deposition. (Rec. Doc. 22-3). Plaintiff's counsel asked Dr. Cashio for:

1. A narrative summary of the treatment of the Plaintiff;

2. A statement as to Mrs. Boudreaux's future expected treatment and specifically, the likelihood that she will require surgery in the form of a possible excision of the distal clavicle;

3. The expected period of recovery for any potential future surgery;

4. The estimated cost of Mrs. Boudreaux's future medical care including the cost of future diagnostic tests and possible surgical intervention;

5. The need and cost of future conservative treatment (including medication) with and without surgery;

6. The causal relationship between the treatment [the doctor] rendered and the future treatment [the Plaintiff] will likely require and the accident [in question];

7. The disability that Plaintiff has sustained as a result of her shoulder injury, with and without surgery.

(Rec. Doc. 22-3).

The Defendants claim that to date, they have received none of the reports requested in the September 26 letter.  Defendants claim that the last record from the doctor that they received was dated July 30, 2007, and nowhere in that record was a reference to future surgeries or disabilities.

Plaintiff and Defendants both seem to recognize that Dr. Cashio is the Plaintiff's treating physician, and as such is not required to submit an expert report under Rule 26.  *Knorr v. Dillard's Store Servs. Inc.*, No. 04-3208, 2005 WL 2060905, at *3 (E.D. La. Aug. 22, 2005)(Vance, J.)("A treating physician may testify to his opinions about a plaintiff's injuries if his testimony is based on knowledge acquired during the course of his treatment of the plaintiff. . . . A written report is therefore not required for a treating physician whose testimony and opinions derive from information learned during actual treatment of the patient, rather than from subsequent evaluation as a specially retained expert.").

Defendants cite *Gilmore v. WWL-TV, Inc.*, No. 01-3606, 2002 WL 31819135 (E.D. La. Dec. 12, 2002)(Engelhardt, J.) for the proposition that a treating physician could not testify as to comments and opinions "not memorialized in writing and timely

exchanged." However, *Gilmore* is distinguishable from the case at bar. In *Gilmore*, Judge Engelhardt considered whether a doctor (plaintiff's treating orthopaedist) could be called to testify about the future medical expenses of the plaintiff when the doctor had not seen the plaintiff in six months. The doctor in question had not submitted a written report to opposing counsel. The court noted that treating physicians are not normally considered to be experts as defined in Rule 26, but in this case, the court held that the plaintiff herself evidenced that there is no need for future medical expenses since she had been dancing on her broken foot for two years after the accident of which she complained. Therefore the court permitted the doctor to testify as to his treatment of the plaintiff but not to opinions or statements about her future treatment which had not been memorialized in writing. It is also worth noting that Judge Engelhardt's scheduling order at the time contained materially different language. In the scheduling order for *Gilmore*, Judge Engelhardt ordered that "written reports of experts, <u>including treating physicians</u>, who may be witnesses . . . shall be obtained and delivered to counsel . . . no . . . later than 60 days prior to [the] Final Pretrial Conference Date." Minute Entry, at 3 (Rec. Doc. 12), *Gilmore v. WWL-TV, Inc.*, No. 01-3606 (E.D. La.

Apr. 10, 2002)(emphasis added).

Therefore in *Gilmore,* there was a specific order from the court that required the exchange of reports by treating physicians. No such order from this Court exists in this case. Defendants also cite three cases in which the courts held that treating physicians are required to submit expert reports when the proposed opinion testimony extends beyond the facts made known during the course of treatment. Defendants cite *Wreath v. United States*, 161 F.R.D. 448, 450 (D. Kan. 1995); *Hall v. Sykes*, 164 F.R.D. 46, 48 (E.D. Va. 1995); and *Piper v. Harnischfeger Corp.*, 170 F.R.D. 173 (D. Nev. 1997) for that proposition.

Defendants are certainly correct about the holdings of the above cases. However, Defendants do not make any showing as to why or how Dr. Cashio's opinions extend beyond the facts made known to him during the course of treatment. Even the information about the future surgeries and disabilities are most likely learned from this doctor's treatment of the plaintiff. *See Salas v. United States*, 165 F.R.D. 31, 33 (W.D.N.Y. 1995)("The relevant question is whether . . . treating physicians acquired their opinions as to the cause of the plaintiff's injuries directly through their treatment of the plaintiff."; *Mangla v. Univ. of Rochester*, 168 F.R.D. 137, 139 (W.D.N.Y.

1996)("Experts are retained for purposes of trial and their opinions are based on knowledge acquired or developed in anticipation of litigation or for trial. A treating physician's testimony, however, is based on the physicians [sic] personal knowledge of the examination, diagnosis and treatment of a patient and not from information acquired from outside sources.").

Courts have held that the requirement of expert reports is a Congressional attempt to balance "the fulsome and efficient disclosure of expert opinions" with a concern that reports should not be required in all situations.  The rule makers "seemed concerned . . . about the resources that might be diverted from patient care if treating physicians were required to issue expert reports as a precondition to testifying." *Watson v. United States*, 485 F.3d 1100, 1107 (10th Cir. 2007).  The purpose of the requirement to exchange expert reports is to eliminate unfair surprise to the opposing party and to conserve resources.  *Minn. Mining & Mfg. Co. v. Signtech USA, Ltd.*, 177 F.R.D. 459, 460 (D. Minn. 1998)(*citing Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995)).  While treating physicians are exempted from the rule requiring submission of expert reports, if the Defendants believe that the Doctor's testimony will produce

information which would be unfair and prejudicial, then the Defendants are free to notice and take the deposition of the doctor prior to trial.

Accordingly, Defendants' motion in limine to limit the testimony of Dr. Cashio is **DENIED.**

**Defendants' Motion in Limine to Exclude the Testimonty of Danny Joyce**

Defendants seek to exclude the testimony of Danny Joyce on the grounds he is not qualified to give an opinion in a trip and fall case like this one.  *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).[1]  Defendants claim that Mr. Joyce is an environmental health expert and has only testified in asbestos related cases, not these type of trip and fall cases.

Plaintiffs argue that Mr. Joyce is an expert in safety. Plaintiff contends Mr. Joyce will provide testimony related to

---

[1] Counsel for both parties spent a substantial amount of time arguing why this Court should apply *Daubert*, and whether *Daubert* was applicable in Louisiana.  The Defendants cited several Louisiana cases which adopted the *Daubert* standard in Louisiana, while Plaintiff noted that *Daubert* as adopted by Louisiana state courts is inapplicable in this situation.  Counsel are reminded that *Daubert,* as well as all other decisions of the United States Supreme Court, applies of its own force in this Court.  *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).  The *Erie* doctrine, in its most simplistic form, holds that a federal court sitting in diversity will apply state substantive law and federal procedural law.  As *Daubert* is an evidentiary standard, it is procedural in nature, and its provisions apply in this diversity action.

whether the accident scene was in compliance with applicable safety codes.  Mr. Joyce has obtained a masters degree in industrial hygiene.  According to the website of Mr. Joyce's alma mater, the University of Central Missouri (formerly Central Missouri State University) a masters in industrial hygiene "prepares graduates to recognize, evaluate, and control environmental factors of chemical and physical stress arising from the work-place."  UCM, Industrial Hygiene, M.S. Degree, http://www.ucmo.edu/x39313.xml.

In addition, Mr. Joyce was a Director of Safety and Health at Avondale Industries for eleven years.  He currently is the President and Principal Consultant for a industrial hygiene, safety, and environmental engineering firm, which "provides safety . . . services to a wide assortment of business."  (Rec. Doc. 27-3 at 1).  Therefore, it does appear that Mr. Joyce has some expertise as to physical stresses and can testify as to his opinions thereto.  Accordingly,

Defendants' Motion in Limine to Exclude Testimony of Danny Joyce is **DENIED**.

**CONCLUSION**

**IT IS ORDERED** that Defendants' Motion in Limine to Limit the Testimony of Dr. Cashio (Rec. Doc. 22) is **DENIED;**

**IT IS FURTHER ORDERED** that Defendants' Motion in Limine to Exclude the Testimony of Danny Joyce (Rec. Doc. 21) is **DENIED.**

New Orleans, Louisiana this the 21st day of November, 2007.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE